1
2
3
4
5
6          **UNITED STATES DISTRICT COURT**
7               **DISTRICT OF NEVADA**

8   FOOTHILLS OF FERNLEY, LLC, a Nevada          3:06-CV-00411-BES-VPC
    Limited Liability Company,
9
                Plaintiff,                        **ORDER**
10
    v.
11
    CITY OF FERNLEY, a municipal
12  corporation,; TODD CUTLER; RALPH
    MENKE; JOE MORTENSEN; CURT
13  CHAFFIN; CHARLES SHEPPARD; and
    MONTE MARTIN,
14
                Defendants.
15  _____

16          Presently before the Court is Plaintiff Foothills of Fernley, LLC's ("Foothills") Motion for

17  Partial Summary Judgment (#53), filed on July 23, 2007.  Defendants City of Fernley, Todd

18  Cutler, Ralph Menke, Joe Mortensen, Curt Chaffin, Charles Sheppard, and Monte Martin

19  (collectively "Fernley") filed their Opposition to Plaintiff's Motion for Partial Summary Judgment

20  (#61) on October 12, 2007.  Foothills filed its Reply to Defendants' Opposition to Plaintiff's

21  Motion for Partial Summary Judgment (#66) on October 31, 2007.

22          Also before the Court is Fernley's Motion for Summary Judgment Pursuant to the U.S.

23  and State Constitutions (#62), filed on October 16, 2007, and Fernley's Motion for Summary

24  Judgment Pursuant to NRS §§ 237, 266 and Related Claims (#63), filed on October 16, 2007.

25  Fernley filed its Opposition to Plaintiff's Motion for Summary Judgment Pursuant to the U.S.

26  and State Constitutions (#75) on November 26, 2007.  Foothills filed its Reply to Defendants'

27  Opposition to Plaintiff's Motion for Summary Judgment Pursuant to the U.S. and State

28  Constitutions (#81) on December 11, 2007.  Fernley filed its Opposition to Plaintiff's Motion

                                    1

1   for Summary Judgment Pursuant to NRS § 237, 266 (sic) and Related Claims (#74) on

2   November 26, 2007.  Foothills filed its Reply to Defendants' Opposition to Plaintiff's Motion for

3   Summary Judgment Pursuant to NRS §§ 237, 266 and Related Claims (#78) on December

4   10, 2007.  A hearing was held regarding all pending motions on March 4, 2008.

5                                        **I. BACKGROUND**

6          Foothills is a Nevada-based developer.  (Compl. (#1) ¶ 13.)  In March 2004, Foothills

7   purchased for development 422 acres in Lyon County, Nevada.  (Hempel Aff. ¶ 4.)[1]  In May

8   2004, Foothills petitioned the City of Fernley (the "City" or "Fernley") to have the property

9   annexed into the City for development, for a Master Plan amendment, and for a Zoning Map

10  amendment.  Id. ¶ 5.  On August 4, 2004, Fernley approved the Master Plan amendment and

11  Zoning Map amendment.  Id.; (Mot. Partial Summ. J. (#53) Ex. N.)  At the time, Fernley

12  required new developments to pay an in-lieu of dedication fee for water services of $1,000.00

13  per acre foot of water rights.  See id. Ex. B.

14         On August 10, 2004, Fernley adopted City of Fernley Ordinance # 2004-006 ("Bill 43").

15  Id.  Bill 43 changed the in-lieu of fee from $1,000.00 to $5,000.00 per acre foot of water rights.

16  Id.  Bill 43 explicitly stated, "This new in-lieu fee will apply to all new applications for tentative

17  subdivision maps."  Id.  On November 9, 2004, Foothills filed its Tentative Map Application with

18  the City.  (Supplement to Mot. Partial Summ. J. (#60) Ex. A.)

19         On October 20, 2004, while Foothills's Tentative Map Application was still pending, City

20  of Fernley Ordinance #2004-019 ("Bill 59") was proposed.  (Mot. Partial Summ. J. (#53) Ex.

21  E.)  As proposed, Bill 59 abolished the in-lieu of fee for residential developers.  Instead, it

22  required residential developers intending to connect to the City's water system – as a condition

23  precedent to a final subdivision map, parcel map, or issuance of a building permit – to dedicate

24  to the City "[a]ny surface or ground-water rights reasonably necessary to insure an adequate

25  water supply to serve all parcels or lots within the project, or a building."  Id.  More specifically,

26  it required 1.12 acre-feet annually ("AFA") (1,000 gallons/day) for each parcel or lot.  Id.  Bill

27

28         [1]The Hempel Affidavit is attached as Exhibit 1 to Foothills's Motion for Partial Summary Judgment (#53).

1  59 exempted from the dedication requirement developers with approved tentative maps.  Id.

2  Bill 59 was adopted on November 17, 2004.  Id.  Since the adoption of Bill 59, Foothills has

3  requested that the City recognize its rights to City water services per the terms of Bill 43.

4  (Hempel Aff. ¶ 8.)  Fernley has refused to do so.  Id.

5      Foothills initiated this action on July 21, 2006, alleging among other things that Bills 43

6  and 59 violate its substantive and procedural due process rights, as well the Equal Protection

7  Clause.  (Compl. (#1) ¶¶ 33-57.)  Foothills also asserts that Fernley failed to comply with

8  Nevada state law in the enactment of Bills 43 and 59.  Id. ¶¶ 58-85.  Foothills has since filed

9  the summary judgment motions currently pending.

10                    **II. LEGAL STANDARD**

11      Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers

12  to interrogatories, and admissions on file, together with the affidavits, if any, show that there

13  is no genuine issue as to any material fact and that the moving party is entitled to judgment

14  as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of demonstrating the absence of a

15  genuine issue of material fact lies with the moving party, and for this purpose, the material

16  lodged by the moving party must be viewed in the light most favorable to the nonmoving party.

17  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141

18  F.3d 1373, 1378 (9th Cir. 1998).  A material issue of fact is one that affects the outcome of the

19  litigation and requires a trial to resolve the differing versions of the truth.  Lynn v. Sheet Metal

20  Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986); S.E.C. v. Seaboard Corp., 677 F.2d

21  1301, 1306 (9th Cir. 1982).

22      If the moving party presents evidence that would call for judgment as a matter of law

23  at trial if left uncontroverted, then the respondent must show by specific facts the existence

24  of a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

25  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party

26  for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not

27  significantly probative, summary judgment may be granted."  Id. at 243-50 (citations omitted).

28  "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences

of which the evidence is reasonably susceptible; it may not resort to speculation." <u>British Airways Board v. Boeing Co.,</u> 585 F.2d 946, 952 (9th Cir. 1978); <u>see also</u> <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment."). Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." <u>Blue Ridge Insurance Co. v. Stanewich</u>, 142 F.3d 1145, 1143 (9th Cir. 1998) (citing <u>Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987)).  Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment.  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

### III. ANALYSIS

**A. Motion for Summary Judgment Pursuant to NRS 237, 266 (#63)**

    **1. NRS 237**

Turning first to Foothills's Motion for Summary Judgment Pursuant to NRS 237, 266 (#63), Foothills argues that Fernley failed to conduct a business impact statement as to the effects of Bills 43 and 59, in violation of NRS 237.  <u>Id.</u> at 8-10.  Foothills also argues that Fernley has violated NRS 237 by failing to have in place a procedure by which citizens can lodge grievances against the decision to enact new fees.  <u>Id.</u> at 10. In opposition, Fernley argues that NRS 237 is inapplicable to the ordinances in question because they do not constitute "rule[s]" as defined by the statute.  (Opp'n (#74) 6-8.)

NRS 237.080(3) provides that before a local governing body adopts a proposed rule, it must make a determination as to whether the proposed rule is likely to "[i]mpose a direct and significant economic burden upon a business" or "[d]irectly restrict the formation, operation or expansion of a business." <u>Id.</u> On making that determination, the governing body must prepare a business impact statement.  <u>Id.</u> § 237.080(5).  "A business that is aggrieved by a rule adopted by the governing body of a local government . . . may object to all or a part of the rule

4

by filing a petition with the governing body . . . within 30 days after the date on which the rule was adopted." Id. § 237.100(1).  For purposes of NRS 237.080, a rule is defined as "[a]n ordinance by the adoption of which the governing body of a local government exercises legislative powers" and "[a]n action taken by the governing body of a local government that imposes, increases or changes the basis for the calculation of a fee that is paid in whole or in substantial part by business."  Id. § 237.060(1).

The statute's definition, however, does not include "ordinance[s] adopted by the governing body of a local government pursuant to a provision of chapter . . . 278."  Id.  NRS 278 is entitled "Planning and Zoning."  Id.  NRS 278.326 provides:

> 1. Local subdivision ordinances shall be enacted by the governing body of every incorporated city and every county, prescribing regulations which, in addition to the provisions of NRS 278.010 to 278.630 inclusive, govern matters of improvements, mapping, accuracy, engineering and related subjects, but shall not be in conflict with NRS 278.010 to 278.630, inclusive.

> 2. The subdivider shall comply with the provisions of the appropriate local ordinance before the final map is approved.  Id.

"Improvement" is defined as "such street work and utilities to be installed on land dedicated or to be dedicated for streets and easements as are necessary for local drainage, local traffic and the general use of property owners in the subdivisions."  Id. § 278.0155.

Insofar as Bills 43 and 59 apply to Foothills's tentative map application[2] the Court holds that they constitute ordinances relating to the subject of improvements.  They require as a condition to connection of City water services a fee in-lieu and dedication respectively, which is related to the water utilities to be made available to the proposed development.  As such, the provisions of NRS 237 do not apply.[3] [4]

---

[2]"Tentative Map" is defined as "a map made to show the design of a proposed subdivision and the existing conditions in and around it."  NRS 278.019.

[3]Foothills has provided no other provision that might supply the authority to enact the ordinances at issue.  See (Mot. Summ. J. (#63).)  NRS 237 itself provides procedural requirements for the enactment of "rules," but it does not authorize the enactments themselves.  See NRS 237.080.

[4]Bills 43 and 59 could also be construed as enacted pursuant to NRS 278.020.  That section provides broad authority to governing bodies of cities and counties "to regulate and restrict the improvement of land and to control the location and soundness of structures."  Id. § 278.020(1).  NRS 278.020(2) further provides that "[a]ny such regulation . . . must take into account: (a) The potential

**2. NRS 266**

Foothills also contends that Fernley failed to comply with NRS 266 in passing Bills 43 and 59. (Mot. Summ. J. (#59) 10-23.) As to NRS 266, Fernley contends that Foothills's claims are barred by the applicable statute of limitations. (Opp'n (#74) 7.) Fernley further claims that even if there were technical violations of NRS 266, the city council was nonetheless in substantial compliance and therefore the ordinances are valid. Id. at 8-12.

NRS 266.115 governs the enactment of ordinances by local governing bodies; it imposes a series of procedural requirements meant to ensure the integrity of the public proceedings in which ordinances are passed. Id. More specifically, NRS 266.115 provides that all proposed ordinances must be read by title to the city council prior to submission to a committee for consideration. Id. § 266.115(1). It further provides that an adequate number of copies of the bill be submitted to the city clerk for public examination, and that a summary of the ordinance be published in a newspaper of general circulation at least ten days prior to adoption of the ordinance. Id. The statute also requires that the proposed ordinance be reported back to the city council at the next meeting, where it must be read by title and summary or in full as introduced, and if amended, as such. Id. § 266.115(2). Once an ordinance is adopted, it must be published by title with an adequate summary including amendments. Id. § 266.115(3)(a). It must also be posted in full in city hall. Id. § 266.115(3)(b).

Turning first to Fernley's argument that the statute of limitations bars the instant claims, NRS 278.0235 states in relevant part:

> No action or proceeding may be commenced for the purpose of seeking judicial relief or review from or with respect to any final action, decision or order of any governing body, commission or board authorized by NRS 278.010 to 278.630, inclusive, unless the action or proceeding is commenced within 25 days after the date of filing of notice of the final action, decision, order with the clerk or secretary of the governing body, commission or board. Id.

Because the ordinances at issue were enacted pursuant to NRS 278.326, the Court

---

impairment of natural resources and the total population which the available natural resources will support without unreasonable impairment."

1  holds that NRS 278.0235 provides the appropriate limitations period.  The Court further holds

2  that because this action was initiated on July 21, 2006, beyond the twenty-five days from the

3  date notice of enacted ordinances was filed with the clerk, it is barred by the applicable

4  limitations period.

5  Foothills attempts to avoid this result by arguing that Fernley waived its ability to assert

6  a statute of limitations defense.  (Reply (#78) 10); (Brief Re: Statute of Limitations (#71) 3-6.)

7  It is undisputed that Fernley did not explicitly plead the statute of limitations in its answer, nor

8  did it raise the issue in a motion to dismiss.  (Def. Brief Re: Statute of Limitations (#80) 2-4.)

9  In fact, the limitations period was first raised by the Court as a possible defense to Foothills's

10  state law claims in its November 5, 2007, order.  (Order (#68) 10-12.)  That notwithstanding,

11  a defendant may raise an affirmative defense in a motion for summary judgment so long as

12  the plaintiff is not prejudiced. Tibbitts Construction Co. v. Ins. Co. of North America, 679 F.2d

13  803, 804 (9th Cir. 1982).

14  According to Foothills, it has been prejudiced insofar as discovery has closed without

15  any notice of the potential for a limitations defense to be raised, and because the defense was

16  not included in Fernley's answer, a motion to dismiss, or a dispositive motion.  (Brief Re:

17  Statute of Limitations (#71) 6.)

18  The Ninth Circuit, however, has held that a party is not prejudiced by the later assertion

19  of a defense because if applicable it would be dispositive at the outset of the action. Wyshak

20  v. City Nat. Bank, 607 F.2d 824, 826 (9th Cir. 1979) (holding that the plaintiff "was not

21  prejudiced by the later assertion of the defense [of limitations] because the limitations rule, if

22  applicable, would be effective at the outset of [plaintiff's] suit.); Owens v. Kaiser Foundation

23  Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (holding that "Appellants may not

24  demonstrate prejudice based solely on the untimely assertion of res judicata because this

25  affirmative defense would have been dispositive had Kaiser asserted it when the action was

26  filed.") (citing Wyshak, 607 F.2d at 926).

27  ///

28

7

1  Because there is no genuine issue of fact as to the applicability of NRS 237 and 266,

2  the Court denies Foothills's motion, and instead grants summary judgment in favor of Fernley.

3  **B. Motion for Summary Judgment Pursuant to the U.S. and State Constitutions (#62)**

4  **1. Equal Protection**

5  Foothills argues that Bill 59 creates a constitutionally impermissible classification. (Mot.

6  Summ. J. (#62) 12-14.) According to Foothills, the fact that residential developers are required

7  to dedicate water rights, while commercial developers requesting less than 100 ERGs (112

8  acre feet of water) are not, is a violation of the equal protection clause. Id.        Where, as

9  here, a statutory classification does not proceed along suspect lines or infringe a fundamental

10  right, "a classification cannot run afoul of the Equal Protection Clause if there is a rational

11  relationship between the disparity of treatment and some legitimate governmental purpose."

12  Heller v. Doe, 509 U.S. 312, 319-20 (1993).  Thus, a classification will withstand an equal

13  protection challenge "if there is any reasonably conceivable state of facts that could provide

14  a rational basis for the classification."   Fed. Communications Comm'n v. Beach

15  Communications, 508 U.S. 307, 313 (1993).  That said, "the rational relation test will not

16  sustain conduct by state officials that is malicious, irrational or plainly arbitrary."  Lockary v.

17  Kayfetz, 917 F.2d 1150, 1155 (9th Cir. 1990) (citation omitted).

18

19  The classification created by Bill 59 is constitutional.  Maintaining the City's water supply

20  is a legitimate government purpose.  Requiring residential developers to dedicate water rights,

21  as opposed to paying an in lieu fee, is reasonably related to that purpose insofar as it ensures

22  that as development continues the City's water supply keeps pace with development.  That

23  commercial developers are not required to dedicate water rights does not render Bill 59

24  unconstitutional.  It is reasonable to exempt commercial developers from the requirement, for

25  example, so as not to hinder commercial development.

26  **2. Substantive Due Process**

27  Foothills also argues that the adoption of Bills 43 and 59 constitutes a violation of its

28  substantive due process rights. (Mot. Summ. J. (#62) 14-21.) As to Bill 43, Foothills contends

8

that the decision to raise the in lieu fee from $1,000.00 to $5,000.00 was arbitrary because no formal study was undertaken as to the true cost to the City of obtaining water rights for new development.  Id. at 14-17.

"A municipal act that neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights will violate substantive due process rights when it is shown that the action is not 'rationally related to a legitimate governmental purpose.'" Richardson v. City and County of Honolulu, 124 F.3d 1150, 1162 (9th Cir. 1997).

Here, the $5,000.00 per acre foot fee is reasonably related to the legitimate government purpose – the preservation of City water resources.  Though no formal study was undertaken, (Taggert Depo. (#62) Ex. 42 72:3-73:13), it is undisputed that the City inquired as to what other cities were charging for water rights, (Mot. Summ. J. (#62) Ex. 41).  The city concluded that other communities were charging between $500.00 and upwards of $5,000.00 per acre foot. Id. Thus, the City could have reasonably believed that a $5,000.00 per acre foot in lieu fee furthered the preservation of the City's water supply.  See Brandwein v. California Bd. of Osteopathic Examiners, 708 F.2d 1466, 1470-71 (9th Cir. 1983) (noting in the equal protection context that "a challenge to a legislative classification must prove that the facts on which the legislature may have relied in shaping the classification 'could not reasonably be conceived to be true by the governmental decisionmaker.'").

As to Bill 59, the result is the same.  Requiring dedication of water rights for new developments is rationally related to the preservation of the City's water supply.

**3. Procedural Due Process**

Foothills alleges that the enactment of Bills 43 and 59 constituted a violation of procedural due process.  (Mot. Summ. J. (#62) 22-29.)  According to Foothills, it has a protectable property interest in receiving water from Fernley because it complied with all the requirements of the Bill 43 prior to the adoption of Bill 59 results in a property right to water at the $1,000.00 in lieu fee.  Id. at 22.

///

9

1    "Procedural due process imposes constraints on governmental decisions which deprive

2    individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of

3    the Fifth or Fourteenth Amendment."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976)  Thus,

4    before reaching the question of the propriety of the procedural mechanisms employed, a court

5    must first determine whether a liberty or property interest exists.   Kentucky Dept. of

6    Corrections v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted).    Though the Nevada

7    supreme court has not squarely addressed the issue of a developer's property interest in

8    services per terms made available at the time of its tentative map application, the Nevada

9    supreme court did hold in King's Castle v. Washoe County Bd. of County Commissioners, 88

10   Nev. 557, 502 P.2d 103 (1972), that a developer whose plans for two highrise condominium

11   buildings were rejected because the plans were not in compliance with the pending regulations

12   of the Nevada Tahoe Regional Planning Agency Plan was not entitled to approval based on

13   the fact that it was in compliance with the regulations effective at the time of the denial.  Id.

14   The court's holding King's Castle is not directly on point here; however, the Court does find

15   that it offers persuasive authority for the proposition that Nevada state law does not recognize

16   a property interest in water services on the terms available at the time a tentative application

17   is made.  Thus, the Court holds that Foothills has no protectable property interest here.

18        Because there is no genuine issue of material fact as to Foothills's constitutional claims,

19   the Court denies Foothills's motion, and instead grants summary judgment in favor of Fernley.

20   **C. Motion for Partial Summary Judgment (#53)**

21        Foothills argues that Bill 59 impermissibly operates retroactively to deprive it of rights

22   acquired under Bill 43.  (Mot. Partial Summ. J. (#53) 7-17.)  According to Foothills, Bill 43

23   applied to all tentative map applications filed after its effective date – September 7, 2004.  Id.

24   at 9.  Foothills argues that because it filed an application after that date but before the

25   enactment of Bill 59, it was entitled to water at the $5,000.00 in lieu fee.  Id.  Foothills claims

26   that the language of Bill 59 which requires that an applicant must have an approved map prior

27   to its effective date in order to avoid the dedication requirement thus operates retroactively.

28   Id.

Though Bills 43 and 59 are not zoning regulations in the traditional sense – that is, they do not purport to apply to a limited geographic area – they are analogous.  In the context of zoning regulations, the general rule is that a building permit may be denied on the basis of a zoning regulation enacted after the application was filed, but before it was approved.  Russian Hill Improv. Assoc. v. Bd of Permit Appeals, 66 Cal. 2d 34, 432 P.2d 824 (1967); Kings Castle, 88 Nev. at 557, 502 P.2d at 104.

That notwithstanding, the majority of jurisdictions apply two exceptions to the general rule.  First, most jurisdictions require an application to be decided under regulations in effect when it was submitted where the applicant has substantially changed its position based on those regulations.  E.g., People ex rel. Skokie Town House Builders, Inc. v. Morton Grove, 16 Ill. 2d 183, 157 NE 2d 33 (1959) (holding that where there has been a substantial change of position, expenditures, or incurrence of obligations, made in good faith by an innocent party either under a building permit, or in reliance on the probability of its issuance, such party has vested property right and may complete the construction and use of premises for purposes originally authorized).

A second exception is recognized where the municipality was guilty of misconduct or bad faith in its dealings with the applicant.  E.g., Ben Lomond, Inc. v. Idaho Falls, 92 Idaho 595, 448 P.2d 209 (1968) (holding that though "some courts have held that a change in the law following an application for a building permit will be applied to the prior application . . . this rule has not usually been applied when a city has unreasonably refused or delayed in passing upon an application until after the new ordinance has become effective, or when the issuing officer has arbitrarily failed to perform a ministerial duty to issue a permit when the applicant was presently entitled to it.") (citations omitted).

In this case, neither of the two exceptions apply.  While some assurances as to the availability of water under an in lieu fee arrangement,  (Parker Decl. (#62) ¶ 5) ("The due diligence efforts [on the part of Foothills as to the potential for annexation into Fernley] included meetings with city officials who indicated there was sufficient water in the City of

11

1    Fernley through the in-lieu fee for the development of the property."), there is no indication
2    that Foothills decision to initiate the development process was based solely on those
3    representations.

4         Beyond that, in most cases where a change in position estopped the municipality from
5    applying a new zoning regulation, the new regulation would have precluded development
6    altogether.  E.g., Nott v. Wolff, 18 Ill. 2d 362, 370-71, 163 NE 2d 809, 813-14 (1960) (holding
7    that where a motel operator was assured by city officials a motel could be built on a proposed
8    site, and where the operator then entered into a thirty-five year lease on the property and
9    retained an architect to prepare plans for a motel, a subsequent change in the zoning
10   ordinance precluding the erection of a motel on the site was did not prevent the issuance of
11   a building permit).  Here, that is not the case.  Bills 43 and 59 represent only modifications to
12   the terms on which water services may be obtained from the City.  As to the second exception,
13   there is no evidence of bad faith or unreasonable delay   the in processing Foothills's
14   application.

15        Because there is no genuine issue of material fact as to Foothills's retroactivity claim,
16   the Court denies its motion, and instead grants summary judgment in favor of Fernley.

17                                    **IV. CONCLUSION**
18

19        For the foregoing reasons, the Foothills's Motion for Partial Summary Judgment (#53)
20   is DENIED.

21        It is further ORDERED that Foothills's Motion for Summary Judgment Pursuant to the
22   U.S. and State Constitutions (#62) is DENIED.

23        It is further ORDERED that Foothills's Motion for Summary Judgment Pursuant to NRS
24   §§ 237, 266 and Related Claims is DENIED.

25        It is further ORDERED that summary judgment is GRANTED in favor of Fernley as to
26   Foothills's claims based on the constitutions of the U.S. and the State of Nevada.
27
     ///
28

It is further ORDERED that summary judgment is GRANTED in favor of Fernley as to Foothills's claims based on NRS §§ 237 and 266.

It is further ORDERED that summary judgment is GRANTED in favor of Fernley as to Foothills's claim based on retroactivity.

The Clerk shall enter judgment in favor of Fernley as to Foothills's claims one, two, three, four, five, and eleven.

IT IS FURTHER ORDERED that the parties shall file a Proposed Joint Pretrial Order on the remaining claims or before April 4, 2008.

DATED: This 21st day of March, 2008.

_____
UNITED STATES DISTRICT JUDGE